IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE


Civil Case No.  11-cv-01368-LTB-KIT


KEITH KEMP, individually and as personal representative of the Estate of Jason Kemp;
   and
CONNIE KEMP, individually,

              Plaintiffs,

v.

IVAN LAWYER, a Trooper of the Colorado State Patrol, in his individual capacity;
KIRK FIRKO, a Corporal of the Colorado State Patrol, in his individual capacity;
CHAD DUNLAP, a Sergeant of the Colorado State Patrol, in his individual capacity;
RALPH C. TURANO, Legal Training Attorney for the Colorado State Patrol, in his individual
   capacity; and
JOHN DOE, employee of the Colorado State Patrol, in his/her individual capacity,

              Defendants.

_____

MEMORANDUM OPINION AND ORDER
_____

Babcock, J.

      This matter is before me on Defendant Chad Dunlap's Motion to Dismiss the First

Amended Complaint Based on Qualified Immunity, Lack of Subject Matter Jurisdiction, and

Failure to State a Claim. [**Doc #37**]  Defendant Dunlap, a Sergeant of the Colorado State Patrol,

is being sued in his individual capacity by Plaintiffs Keith and Connie Kemp, both individually

and as personal representative of the Estate of Jason Kemp.  Oral arguments would not

materially assist me in my determination of this motion.  After consideration of the parties'

arguments, and for the following reasons, I DENY the motion.

## I. BACKGROUND

Plaintiffs are the parents of Jason Kemp, who was killed by a gunshot wound to his chest during a conflict at his apartment with Colorado State Patrol officers on July 20, 2010. Plaintiffs have filed this lawsuit against the officers involved seeking damages for violations of Jason's constitutional rights, pursuant to 42 U.S.C.§ 1983 ("§1983"), and wrongful death under state law.

## II.  FACTS

In their First Amended Complaint Plaintiffs allege that on July 20, 2010, Jason Kemp was jet skiing on the Colorado River. In the early evening, Jason and a few of his friends decided to head back to his apartment. They loaded up the jet ski on a trailer attached to Jason's truck. When they arrived at the apartment, they attempted to back the truck and trailer into the driveway, but the jet ski fell off the trailer and the truck became stuck in a neighbor's lawn. After conferring with the neighbor, Jason and his friends removed the truck, trailer, and jet ski, and parked them in the driveway. Plaintiffs allege that this accident resulted in no physical injury and, at most, very minor property damage to the neighbor's yard. At some point, a neighbor called the police to report the incident.

Jason and his friends then entered the apartment. Shortly thereafter, Defendant Ivan Lawyer, a Trooper with the Colorado State Patrol, and Defendant Kirk Firko, a Corporal with the Colorado State Patrol, arrived at the apartment with their guns drawn. They began knocking at the door, announced themselves as police, and demanded entry. Jason responded that he would not allow entry without a warrant.

Defendants Lawyer and Firko then escalated the situation by attempting to kick down the door to gain entry.  Plaintiffs allege that Defendants Lawyer and Firko had no basis for believing that Jason was armed or posed a threat to himself or others.  Defendants Lawyer and Firko have indicated that they both believed that a warrantless, forced entry was justified by their desire to secure blood alcohol evidence to support a possible DUI charge against Jason.  Jason repeatedly asked Defendants to show a warrant and told them that they could not enter the apartment without one.

Plaintiffs' complaint further alleges that, upon information and belief, while Defendants Lawyer and Firko were trying to kick the door down, Defendant Chad Dunlap – their supervisor and a Sergeant with the Colorado State Patrol – arrived on the scene.  Defendant Dunlap witnessed the attempts of Defendants Lawyer and Firko to kick down the door, without a warrant and with their guns drawn, apparently in order to preserve evidence related to a possible DUI that had resulted in only minimal property damage.  However, he "did not counsel or direct Defendants Lawyer and Firko to cease their attempts at a forced, warrantless entry."  Instead, he "provided aid and support for Lawyer and Firko's unconstitutional conduct" by guarding the back door, and holding individuals who exited there at gunpoint.

Defendants Lawyer and Firko ultimately kicked out the frame of the door and were able to force it open wide enough to wedge a piece of the frame in the doorway, which prevented Jason from fully closing the door.  At some point during the struggle, Jason peered around the slightly-ajar door, and one of the Defendants pepper-sprayed him in the face.  Defendant Firko then went around to the back of the building, leaving Defendant Lawyer at the front door.  At

3

some point the door opened and Defendant Lawyer shot Jason, who was unarmed, in the chest. Jason died at the scene.

Plaintiffs assert the following claims against Defendant Dunlap, acting in his individual capacity, related to the death of Jason Kemp:  (1) a § 1983 claim for warrantless entry in violation of the Fourth Amendment; (2) a § 1983 claim for excessive/deadly force in violation of the Fourth Amendment; (3) a claim for conspiracy to violate § 1983; (4) a § 1983 claim for supervisor liability; and (5) a claim for wrongful death under Colorado law.

## III.  LAW

Defendant Dunlap has filed this motion seeking dismissal of the claims asserted against him based on the defense of qualified immunity.  The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). Once a defendant asserts qualified immunity, the plaintiff bears the burden of satisfying a "strict two-part test. " *McBeth v. Himes*, 598 F.3d 708, 716 (10th Cir. 2010)(*quoting Bowling v. Rector*, 584 F.3d 956, 964 (10th Cir. 2009)).  That is "[t]he plaintiff must establish (1) that the defendant violated a constitutional or statutory right, and (2) that this right was clearly established at the time of the defendant's conduct . . . ". *Id.*

Defendant Dunlap's qualified immunity defense is raised in the context of a motion to dismiss, so I bear in mind the Fed. R. Civ. P. 12(b)(6) standard.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127

4

S.Ct. 1955, 167 L.Ed.2d 929 (2007); *Brown v. Montoya*, 662 F.3d 1152, 1162-63 (10th Cir.

2011).  To survive a motion to dismiss, a plaintiff's pleadings must "nudge[ ] their claims across

the line from conceivable to plausible." *Bell Atlantic v. Twombly*, *supra*, 550 U.S. at 570.   In

*Ashcroft v. Iqbal, supra,* the Supreme Court applied this standard to a motion to dismiss based on

qualified immunity, and formulated the test as follows:

> To survive a motion to dismiss, a complaint must contain sufficient factual
> matter, accepted as true, to state a claim to relief that is plausible on its face. A
> claim has facial plausibility when the plaintiff pleads factual content that allows
> the court to draw the reasonable inference that the defendant is liable for the
> misconduct alleged. The plausibility standard is not akin to a probability
> requirement, but it asks for more than a sheer possibility that a defendant has
> acted unlawfully. Where a complaint pleads facts that are merely consistent with a
> defendant's liability, it stops short of the line between possibility and plausibility
> of entitlement to relief.

129 S.Ct. at 1949 (quotations and citations omitted).  In reviewing a motion to dismiss, "all

well-pleaded factual allegations in the . . . complaint are accepted as true and viewed in the light

most favorable to the nonmoving party." *Brown v. Montoya, supra,* 662 F.3d at 1162 -1163

(*quoting Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006)).

   Defendant Dunlap also seeks dismissal, on the basis of qualified immunity, pursuant to

Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.  Dismissal under Rule 12(b)(1)

calls for a determination that the court lacks authority to adjudicate the matter, attacking the

existence of jurisdiction rather than the allegations of the complaint.  *See Castaneda v. INS*, 23

F.3d 1576, 1580 (10th Cir. 1994)(recognizing federal courts are courts of limited jurisdiction and

may only exercise jurisdiction when specifically authorized to do so).  A facial attack on subject

matter jurisdiction, as here, "looks only to the factual allegations of the complaint in challenging

the court's jurisdiction." *Muscogee (Creek) Nation v. Okla. Tax Comm'n*, 611 F.3d 1222, 1227

5

n. 1 (10th Cir. 2010).  A court reviewing a facial attack pursuant to Rule 12(b)(1) "accept[s] the complaint's factual allegations as true and asks whether the complaint, standing alone, is legally sufficient to state a claim for relief."  *Wyoming v. United States*, 279 F.3d 1214, 1222 (10th Cir. 2002).  The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction.  *Basso v. Utah Power & Light Co.,* 495 F.2d 906, 909 (10th Cir. 1974).

## IV. § 1983 CLAIMS

Title 42 U.S.C. § 1983 provides that "[e]very person who, under color of any statute . . . subjects, or causes to be subjected,  any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured."  Plaintiffs' first and second § 1983 claim against Defendant Dunlap are for warrantless entry and excessive force in violation of the Fourth Amendment which protects the right to be free from unreasonable searches and seizures.  Plaintiffs' third claim is that, in so doing, the Defendants together conspired to violate §1983.  Finally, in their fifth claim, Plaintiffs contend that Defendant Dunlap was responsible for supervising Defendant Lawyer and Firko, and that he directed, had actual knowledge of, and acquiesced in their illegal conduct resulting in the warrantless entry and excessive force.

A.  Whether Defendant Violated A Constitutional Right

In applying the two-part qualified immunity analysis, I first address the question of whether Plaintiffs have adequately alleged that Defendant Dunlap violated Plaintiffs' federally protected rights.  In doing so, I  "consider[ ] whether the facts taken in the light most favorable to the plaintiff show that the defendant's conduct violated a constitutional right" cognizable under § 1983.  *Poolaw v. Marcantel*, 565 F.3d 721, 728 (10th Cir. 2009).  Thus, I first determine whether

the warrantless entry into Jason's house, and the subsequent force used against him, constituted violations of his constitutional rights.

Under Fourth Amendment law, searches and seizures inside a home without a warrant are "presumptively unreasonable." *Kentucky v. King*, ___ U.S. ___,  131 S. Ct. 1849, 179 L.Ed.2d 865 (2011)(*citing Brigham City v. Stuart*, 547 U.S. 398, 403, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006)).   Warrantless searches of a home may overcome the presumption of unreasonableness only if the police can show both probable cause and the presence of exigent circumstances.  *Id.*; *United States v. Davis*, 290 F.3d 1239, 1242 (10th Cir. 2002).  Exceptions to the warrant requirement are few in number and carefully delineated, and the police bear a heavy burden when attempting to demonstrate an urgent need that might justify a warrantless search.  *Welsh v. Wisconsin*, 466 U.S. 740, 749-50, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984).   Court have generally ruled that warrantless entry is not justified for the sole purpose of obtaining blood alcohol evidence.  *Id.* at 753 ("application of the exigent-circumstances exception in the context of a home entry should rarely be sanctioned when there is probable cause to believe that only a minor offense has been committed"); *People v. Wehmas*, 246 P.3d 642 (Colo. 2010)(ruling that the need to obtain blood alcohol evidence "will not, as a general rule, create the level of imminency required to override the constitutional protection against warrantless entry").

To determine the constitutionality of the use of force, courts assess whether the officers' actions were "objectively reasonable" in light of the facts and circumstances confronting them. *Graham v. Connor*, 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); *see also Tennessee v. Garner*, 471 U.S. 1, 11, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985).   Reasonableness "must be judged from the perspective of a reasonable officer on the scene," who is "often forced

to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Graham v. Connor*, *supra*, 490 U.S. at 396–397.  "[W]here the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so." *Tennessee v. Garner, supra*, 471 U.S. at 11.  In applying the legal test for whether an officer's use of deadly force is reasonable, courts must weigh "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Cordova v. Aragon*, 569 F.3d 1183, 1188 (10th Cir. 2009).  Some of the factors include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (*citing Weigel v. Broad*, 544 F.3d 1143, 1151–52 (10th Cir. 2008)).

I conclude that, given the circumstances alleged here and when the facts are accepted as true, the warrantless and forced entry into Jason's home, and the ensuing force used against him, clearly constituted violations of his Fourth Amendment right against illegal search and seizure. First, even if the warrantless forced entry into Jason's residence to obtain blood-alcohol evidence could be deemed as justified, the alleged force used by Defendants Lawyer and Firko far exceeded their interest in obtaining this evidence in a relatively minor situation.  Likewise, Defendant Lawyer's actions when using deadly force were clearly not objectively reasonable in light of the facts and circumstances alleged.

The next question then is whether Defendant Dunlap *himself* acted to deprive Plaintiffs of those rights and whether he may be held liable for that deprivation.  *See Dodds v. Richardson*,

614 F.3d 1185, 1199 (10th Cir. 2010), *cert. denied*, ___U.S. ___, 131 S.Ct. 2150, 179 L.Ed.2d

935 (2011).  Dunlap argues that Plaintiffs have not alleged sufficient facts to support that his

actions during the incident violated Jason's constitutional rights – related to both the warrantless

search and the excessive force – because Plaintiffs admit that he did not enter the apartment, but

rather guarded outside at the rear of the residence during the incident.  In response, Plaintiffs

argue that they allege personal liability against Dunlap "through his own personal participation

in the chain of events that led to Jason's death."  Plaintiffs allege that Defendant Dunlap arrived

at the scene while Defendants Lawyer and Firko were trying to kick down the door with their

guns drawn, and so it is reasonable to infer that at that time Dunlap knew that:  1) the underlying

incident was, at most, a minimal traffic accident and/or possible DUI that involved no personal

injury and at most minimal property damage; 2) the potential driver was not a threat to anyone;

and 3) there was no evidence that Jason was armed or a flight risk.  Without attempting to stop

Defendants Lawyer and Firko, Defendant Dunlap then assisted them by guarding and detaining

individuals leaving at the backdoor.  Based on this, Plaintiffs argue that they have alleged

Dunlap's personal liability in that he failed to stop or control the warrantless search and the use

of excessive force by Defendants Lawyer and Firko, and instead participated in the continuation

of the acts by guarding the backdoor.

   Although there is no allegation that Defendant Dunlap himself entered the residence, or

that he personally interacted with Jason Kemp, his actions and inactions during the uninterrupted

sequence of events directly facilitated and contributed to the warrantless search and use of force.

To establish § 1983 liability in an individual capacity, "the plaintiff must establish a deliberate,

intentional act" on the part of the defendant "to violate [the plaintiff's legal] rights."  *Parro v.*

*Barnes*, 624 F.3d 1322, 1327-28 (10th Cir. 2010)(*quoting Serna v. Colo. Dep't. of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006)); *see also Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008)("[i]ndividual liability under § 1983 must be based on personal involvement in the alleged constitutional violation").  Defendant Dunlap's conduct here was objectively unreasonable under the circumstances as alleged.  The well-pled allegations meet the requisite plausibility test and support Defendant Dunlap's liability based on his participation in the incident an individual officer.

In addition, the allegations support a plausible § 1983 claim for supervisory liability against Defendant Dunlap, as alleged in Plaintiffs' complaint.  A defendant sued in his individual capacity under § 1983, may be subject to personal liability and/or supervisory liability.  *See Bruner-McMahon v. Hinshaw*, 2012WL 138607 (D. Kan., Jan. 12, 2012).  While personal liability under § 1983 must be based on personal involvement in the alleged constitutional violation, *id.* (*citing Brown v. Montoya*, *supra*,  662 F.3d at 1163; *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997)), supervisory liability under §1983 "allows a plaintiff to impose liability upon a  defendant-supervisor who creates, promulgates, implements, or in some other way possesses responsibility for the continued operation of a policy the enforcement (by the defendant- supervisor or [his] subordinates) of which subjects, or causes to be subjected that plaintiff to the deprivation of any rights secured by the Constitution." *Dodds v. Richardson*, *supra*, 614 F.3d at 1199.  To establish supervisory liability, a plaintiff must show that "(1) the defendant . . . implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Id.*

In so ruling, the Tenth Circuit recognized  the "previously enunciated § 1983 causation and personal involvement analysis," and that "§ 1983 liability only be imposed upon those defendants whose own individual actions cause a constitutional deprivation because it requires plaintiffs prove each defendant took some act with the constitutionally applicable state of mind that caused the alleged constitutional violation." *Id.* at 1200 (*citing Ashcroft v. Iqbal*, *supra*). Thus, the Tenth Circuit ruled that a defendant-supervisor may be liable under § 1983 where an "affirmative" link exists between the unconstitutional acts by their subordinates and their "adoption of any plan or policy – express or otherwise – showing their authorization or approval of such misconduct." *Id.* at 1200-01 (*quoting Rizzo v. Goode*, 423 U.S. 362, 371, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976)).  And so, "[a] plaintiff could establish the defendant-supervisor's personal involvement by demonstrating his personal participation, his exercise of control or direction, or his failure to supervise, or his knowledge of the violation and acquiesce[nce] in its continuance." *Id.* at 1195 (quotations omitted).

Plaintiffs contend that Defendant Dunlap personally directed, had actual knowledge of, and acquiesced in both the forced entry and the use of excessive force.  Specifically, they assert in their complaint that Dunlap "failed to intervene or remedy the violation of Plaintiff's constitutional rights, and instead chose to supervise, directly participate in, and/or acquiesce in the constitutional violations . . . with the same purpose and state of mind as Defendant Lawyer – to gain entry into the apartment regardless of the risk to the safety of those inside in order to gather chemical evidence, even though a reasonable officer in [his] position would have known that Jason would not have voluntarily submitted to a chemical test and that they had no right to

forcibly require Jason to submit to such a test under the circumstances."  [Doc # 22 ¶¶ 78 & 79]

In support of these claims, Plaintiffs allege that:

> Defendant Dunlap actively participated in escalating the tension and level of force used at the scene, laying the groundwork for Jason's death. As the supervising sergeant on the scene, it was Defendant Dunlap's duty to supervise Lawyer and Firko and to take all reasonable actions to prevent violations of constitutional rights. Yet, rather than directing Lawyer and Firko to cease trying to violently force their way into the home without a warrant, Dunlap condoned, ratified and approved of Lawyer and Firko's actions, and then provided support for their attempts at entry by guarding the back exit from the house. Defendant Dunlap provided support as Defendants Lawyer and Firko escalated the tension and level of force used on the scene, laying the groundwork for Jason's death. Dunlap watched as Firko and Lawyer attempted to kick down the door with their guns drawn, knowing they were seeking entry without a warrant solely to further a fruitless quest for chemical evidence. Dunlap knew that even if Firko and Lawyer gained entry into the residence, Jason would not have voluntarily submitted to a chemical test and that Firko and Lawyer had no right to forcibly require Jason to submit to such a test under the circumstances. Thus, Dunlap knew that the quest for chemical evidence by forcibly entering the residence was likely to be fruitless as well as illegal. Dunlap was present on the scene and, as the supervising officer, was likely informed that Lawyer and/or Firko had ripped a part of the door frame off and shoved it into the open door to prop it open [and ...] that Lawyer and/or Firko had pepper sprayed Jason.   [Doc # 22 ¶ 37]

When these allegations are taken as true, I conclude that Plaintiffs have alleged facts to support a claim of individual supervisory liability against Dunlap related to the warrantless search based on his failure to stop the entry – which he is alleged to have witnessed and presumptively knew to involve only a minimal traffic accident and/or possible DUI – and where there was no indication that Jason was armed or a flight risk.  Failing to stop Defendant Lawyer and Firko's attempt, with guns drawn, to kick their way into the residence without a warrant, and then supporting their ultimate entry by guarding the back exit, constituted implicit approval sufficient to state a plausible § 1983 claim of supervisor liability for a constitutional violation based on the warrantless search.  A defendant in a supervisory position can be personally

involved in an alleged constitutional violation by his subordinates when he "personally directed his subordinates to take the action resulting in the alleged constitutional violation" or "when he had actual knowledge that his subordinates were committing the alleged constitutional violation and he acquiesced in its commission." *Gatrell v. City and County of Denver,* 2011 WL 2185793 (D.Colo. 2011)(*citing Woodward v. City of Worland,* 977 F.2d 1392, 1400 (10th Cir.1992)).

Plaintiffs also allege sufficient facts of supervisory liability related to the use of excessive force because they have alleged that Defendant Dunlap, as the supervising officer on the scene, had the ability, opportunity and, indeed, the duty to prevent the deadly shooting from occurring. *See generally Mick v. Brewer*, 76 F.3d 1127, 1136 (10th Cir.1996)(a government official has a duty to intervene to help a citizen whose constitutional rights are being violated in the officer's presence, where the official had a reasonable opportunity to intervene).  Plaintiffs allege that Dunlap was aware that Defendants Lawyer and Firko were attempting armed, forced entry into Jason's residence without permission.  Plaintiffs argue that his failure to stop the entry, coupled with his assisting at the rear of the residence, are facts that make out a plausible claim for supervisory liability in the ultimate use of excessive force by Defendant Lawyer.  I agree.  While Defendant Dunlap was not present at the front of the house, his acts and failures to act as alleged, are not too attenuated to support a plausible claim that he caused the constitutional deprivation of deadly force.  As such, I conclude that Plaintiffs have alleged facts that, if proven at trial, suffice to establish a plausible claim that Defendant Dunlap's personal involvement caused the excessive force violation.  *See Dodds v. Richardson, supra*, 614 F.3d at 1195-96 (a "causal connection" is alleged by claiming that a supervisor defendant "set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive plaintiff

of [his or] her constitutional rights")(*quoting Snell v. Tunnell*, 920 F.2d 673, 700 (10th Cir. 1990)).

Finally, I address whether the facts alleged show Defendant Dunlap acted with the state of mind required to establish he committed the constitutional violations.  "[T]he factors necessary to establish a § 1983 violation depend on the constitutional violation at issue, including the state of mind required to establish a violation of that provision." *Dodds v. Richardson, supra,* 614 F.3d at 1204 (*citing Ashcroft v. Iqbal*, *supra*).  Under the Fourth Amendment, an action is "reasonable," regardless of the individual officer's state of mind, "as long as the circumstances, viewed *objectively,* justify [the] action." *Brigham City, Utah v. Stuart, supra,* 547 U.S. at 404-405 (*citing Scott v. United States,* 436 U.S. 128, 138, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978); *Bond v. United States,* 529 U.S. 334, 338 n. 2, 120 S.Ct. 1462, 146 L.Ed.2d 365 (2000)(noting that "[t]he officers subjective motivation is irrelevant")).  In addition, to establish a violation of § 1983 by a supervisor, the plaintiff must, at minimum, demonstrate a deliberate, intentional act on the part of the defendant to violate the plaintiff's legal rights. *Porro v. Barnes*, *supra*, 624 F.3d at 1327-28; *see also Dodds v. Richardson, supra*, 614 F.3d at 1204-05.

Plaintiffs have alleged that Defendant Dunlap acted with "deliberate indifference" to Jason's constitutional rights when he failed to act to stop, control and diffuse the situation and instead assisted by guarding the rear.  They have alleged that Defendant Dunlap witnessed the armed attempts to enter without a warrant, chose not to intervene to stop, control or diffuse the encounter while knowing the underlying circumstances, and then provided support for the continued escalation of the events.  These facts and the inferences therefrom, when take as true,

14

are sufficient to support a plausible claim that his actions and failures to act constituted

deliberate indifference, and such conduct was objectively unreasonable under the totality of the

circumstances alleged.  *See Brown v. Montoya, supra,* 662 F.3d at 1170-71.

B.  Whether the Right Was Clearly Established

Having determined that Plaintiffs' complaint adequately alleges that Defendant Dunlap

violated Jason's constitutional rights related to the warrantless entry and use of force – based on

both personal and supervisor liability – I now reach the second prong of the qualified immunity

analysis; specifically, whether the constitutional rights that were violated were, at the time of the

incident, clearly established.

Whether a right is "clearly established" is an objective test; "[t]he relevant, dispositive

inquiry in determining whether a right is clearly established is whether it would be clear to a

reasonable officer that his conduct was unlawful in the situation he confronted."  *Stearns v.

Clarkson*, 615 F.3d 1278, 1282 (10th Cir. 2010)(quotation omitted).  "In discussing the degree of

factual similarity that is required to conclude that the law is clearly established, the [Supreme]

Court [has] noted that all that is required is that prior case law provide 'fair warning' that an

officer's conduct would violate constitutional rights."  *Denver Justice & Peace Committee, Inc.

v. City of Golden*, 405 F.3d 923, 932 (10th Cir. 2005)(*quoting Hope v. Peltzer*, 536 U.S. 730,

739-41, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002)).

As an initial matter, I note that Defendant Dunlap does not argues that Fourth

Amendment law related to use of excessive force was not clearly established at the time of the

incident.  "The precise question asked in an excessive force case is whether the officers' actions

are objectively reasonable in light of the facts and circumstances confronting them, without

regard to their underlying intent or motivation." *Thomson v. Salt Lake County*, 584 F.3d 1304, 1313 (10th Cir. 2009)(citations omitted).  Reasonableness is evaluated under a totality of the circumstances approach, by careful consideration of the facts and circumstances of the particular case, judged from the perspective of a reasonable officer on the scene and not with the 20/20 vision of hindsight.  *Id.*  Instead, in his motion Defendant Dunlap argues that Plaintiffs' have failed to assert that his actions – in guarding the rear of the residence at the time of the shooting – were objectively unreasonable under the circumstances.  However, as discussed *supra,* I disagree.

Rather, Defendant Dunlap's primary argument is that the Fourth Amendment law related to warrantless entry, as applied to these circumstances, was not clearly established at the time of the incident on July 20, 2010.  He acknowledges that a warrantless entry to preserve evidence of blood-alcohol content was ruled unconstitutional – based on the rationale that the underlying offense of driving while intoxicated was "extremely minor" – by the Supreme Court in 1984 in *Welsh v. Wisconsin, supra*, 466 U.S. at 749-50.  He argues, however, that the law in Colorado at the time was that driving while intoxicated was a serious crime, as opposed to the law in Wisconsin at issue in *Welsh v. Wisconsin.  See* Colo. Rev. Stat. § 42-4-1301 (providing a maximum sentence for driving while intoxicated of one year imprisonment and a $1,000 fine). He further argues that many cases at the time of the incident distinguished *Welsh v. Wisconsin, supra*, by holding that a warrantless search was permissible in jurisdictions that provided prison terms for driving while intoxicated.  *See People v. Thompson*, 135 P.3d 3, 10 (Cal. 2006) (analyzing cases that hold a warrantless entry to test blood-alcohol content is permissible). Although Colorado has subsequently held that the dissipation or masking of blood-alcohol

16

content, standing alone, is not sufficient exigent circumstance to justify a warrantless entry – *see People v. Wehmas*, 246 P.3d 642, 649-51 (Colo. Nov. 22, 2010) – Dunlap maintains that *People v. Wehmas* was decided four months after the incident at issue here.

Plaintiffs argue, in response, that even assuming a reasonable officer could believe the law at the time justified a warrantless entry to secure DUI evidence, the law was clear that an armed and violent forced entry would not be legal under the circumstances alleged here; specifically, when the potential driver was no longer a danger and the only possible crimes committed did not involve bodily injury or a continued threat to others.  And, it is Federal Constitutional law that controls the analysis of the Fourth Amendment claims alleged here.  I agree with Plaintiffs that the law was sufficiently clear at the time of the incident here that Defendant Dunlap may not claim qualified immunity.

The chief evil against which the Fourth Amendment is directed is warrantless entry and search of home.  *Payton v. New York*, 445 U.S. 573, 585, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980)(citations omitted).  It has long been the law that the  "central requirement" of a warrantless search is one of reasonableness.  *Texas v. Brown*, 460 U.S. 730, 739, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983).  In assessing whether a search is reasonable, the law requires the balancing of the privacy-related and law enforcement-related concerns to determine if the intrusion was reasonable.  *Illinois v. McArthur*, 531 U.S. 326, 331-33, 121 S.Ct. 946, 148 L.Ed.2d 838 (2001)(requiring the police make reasonable efforts to reconcile their law enforcement needs with the demands of personal privacy).  Thus, when the government's interest is only to arrest for a minor offense, that presumption of unreasonableness is difficult to rebut.  *Welsh v. Wisconsin, supra*,  466 U.S. at 750.

Even assuming that the ruling of *Welsh v. Wisconsin, supra*, could be distinguished to the incident here based on an assessment of the severity of the underlying offense, as argued by Defendant Dunlap, the clear law was that in order to overcome the legal proposition that searches and seizures inside a home without a warrant are presumptively unreasonable, law enforcement-related concerns must be balanced against the strong  privacy protections of the residence.   The circumstances in this case, as alleged, were clear that no reasonable officer would assess that the minor law-enforcement concerns – when the alleged offense did not result in anything other than minimal property damage and there was no indication of any additional danger – were adequate to over-ride Jason's articulated rights against illegal search and seizure. The Fourth Amendment law related to these circumstances was clear at the time of the incident in order to provide all Defendants fair warning that their conduct was unconstitutional.  *See Garcia by Garcia v. Miera*, 817 F.2d 650, 657 (10th Cir.1987)(ruling that it is incumbent upon government officials "to relate established law to analogous factual settings").

C.  Conspiracy Claim under § 1983

In the fourth claim of their complaint, Plaintiffs assert that the Defendants together conspired to violate § 1983.  Specifically, they allege that Defendants Lawyer, Firko, and Dunlap agreed – "by words or conduct" –  to violated Plaintiff's constitutional rights; they performed one or more unlawful act to accomplish the violation; and their conduct caused injury.

In this motion Defendant Dunlap does not assert that this claim should be dismissed based on qualified immunity, but rather that Plaintiffs have failed to state a claim upon which relief can be granted.  To plead a § 1983 conspiracy claim, a plaintiff must allege a combination of two or more persons acting in concert and having a meeting of the minds, an agreement

18

among the defendants, or a general conspiratorial objective to violate a constitutional right.

*Brooks v. Gaenzle*, 614 F.3d 1213, 1227-28 (10th Cir. 2010).  In addition, a plaintiff  "must

allege specific facts showing an agreement and concerted action amongst the defendants."

*Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1998).   "Conclusory allegations

of conspiracy are insufficient to state a valid § 1983 claim."  *Id.*

> In support of this claim, Plaintiffs' complaint alleges that:

> In their attempt to carry out a warrantless entry into Jason's apartment by the use
> of force and, through their violent insistence in carrying out a warrantless entry,
> unnecessarily creating a situation that led to Jason's death by the unjustified use
> of excessive and deadly force, Defendants Lawyer, Firko, and Dunlap acted
> jointly and in concert.  None objected to or attempted to stop the illegal actions of
> the other, and their actions reflect an agreement to work jointly to commit a
> violation of Jason's constitutional rights. [Doc # 22 ¶ 35]

Defendant Dunlap asserts that these allegations are insufficient to establish or show an

agreement or concerted action by him to violate Jason's constitutional rights.  In order to plead a

conspiracy claim, a plaintiff must allege, by direct or circumstantial evidence, a meeting of the

minds or agreement among the defendants.  *Salehpoor v. Shahinpoor*, 358 F.3d 782, 789 (10th

Cir. 2004)(*citing Abercrombie v. City of Catoosa,* 896 F.2d 1228, 1230 (10th Cir. 1990)).

I conclude that when the alleged facts are deemed true, and the inferences are viewed in

favor of Plaintiffs, they have adequately alleged an agreement or meeting of the minds by the

Defendants to violate Jason's rights against illegal entry without a warrant and excessive force.

Although circumstantial, the evidence of an agreement is Defendant Dunlap's acts that resulted

in the continuation of the warrantless entry and ensuing shooting – namely, that he did not stop

the armed, forcible attempt to enter the residence by Defendants Lawyer and Firko, and then

assisted them by guarding the rear of the residence during the continued entry.  Such evidence

constitutes sufficient "specific facts" that reflect an agreement to work jointly to commit a violation of Jason's constitutional rights, via their concerted actions to forcibly enter his residence. *Tonkovich v. Kan. Bd. of Regents*, *supra,* 159 F.3d at 533.

## V.  WRONGFUL DEATH STATE LAW CLAIM

Lastly, I address Defendant Dunlap's challenge to Plaintiffs' state law claim against him for wrongful death pursuant to Colo. Rev. Stat § 13-21-202, which provides a cause of action where "the death of a person is caused by a wrongful act, neglect of default of another." Defendant Dunlap argues that he is entitled to qualified immunity on this claim, under the Colorado Government Immunity Act, Colo. Rev. Stat §§ 24–10–101, *et seq.* ("CGIA").  I disagree.

The CGIA provides that public employees are immune from liability on tort claims arising out of an act or omission of the employee – during the performance of his duties and within the scope of his employment –  unless the act or omission causing such injury was willful and wanton.  Colo. Rev. Stat. § 24–10–105(1); *Carothers v. Archuleta County Sheriff,* 159 P.3d 647, 650 (Colo. App. 2006); *see also Carnation Building Services, Inc. v. City and County of Denver*, 2011WL6940474 (D.Colo. 2011).  When a claim of wilful and wanton behavior is asserted, the CGIA requires that a specific factual basis thereof be plead in the complaint, and the failure to do so "shall result in dismissal of the claim for failure to state a claim upon which relief can be granted."  Colo.Rev.Stat. §§ 24–10–110(5)(a) and (b).  While "wilful and wanton" is not defined in the CGIA, Colorado courts have applied the definition found in the punitive damages context; specifically, as "conduct purposely committed which the actor must have realized as dangerous, done heedlessly and recklessly, without regard to consequences, or of the

rights and safety of others, particularly the plaintiff." *Wilson v. Meyer*, 126 P.3d 276, 282 (Colo. App. 2005)(*quoting* Colo.Rev.Stat. § 13–21–102(1)(b)); *see also Carnation Building v. Denver*, *supra*.

Defendant Dunlap argues that Plaintiffs have failed to plead any wilful and wanton acts by him that caused Jason's death.  They concede, in fact, that Jason was shot in the front of the house, by Defendant Lawyer, while Dunlap was in the rear of the residence.  Plaintiffs argue, in response, that Dunlap's eggregious personal participation – as more fully set forth *supra* – indicate actions which he must have realized were dangerous, done heedlessly and recklessly, without regard to the consequences or the rights and safety of others.  I agree that these allegations constitute willful and wanton acts that caused the injury; namely, Jason's death.

ACCORDINGLY, I DENY Defendant Chad Dunlap's Motion to Dismiss the First Amended Complaint Based on Qualified Immunity, Lack of Subject Matter Jurisdiction, and Failure to State a Claim  [**Doc #37**].

Dated:  February    8   , 2012 in Denver, Colorado.

BY THE COURT:


    s/Lewis T. Babcock
LEWIS T. BABCOCK, JUDGE