IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No. 11-cv-01368-LTB-KMT

KEITH KEMP, individually and as personal representative of the Estate of Jason Kemp;
and
CONNIE KEMP, individually,

        Plaintiffs,
v.

IVAN LAWYER, a Trooper of the Colorado State Patrol, in his individual capacity;
KIRK FIRKO, a Corporal of the Colorado State Patrol, in his individual capacity;
CHAD DUNLAP, a Sergeant of the Colorado State Patrol, in his individual capacity;
RALPH C. TURANO, Legal Training Attorney for the Colorado State Patrol, in his individual
    capacity; and
JOHN DOE, employee of the Colorado State patrol, in his/her individual capacity,

        Defendants.
_____

MEMORANDUM AND OPINION
_____
Babcock, J.

      This matter is before me on a Motion to Dismiss filed by Defendant, Ralph C. Turano, who is being sued in his individual capacity, as Legal Training Attorney for the Colorado State Patrol, by Plaintiffs Keith and Connie Kemp, individually and as personal representative of the Estate of Jason Kemp. [**Doc # 41**] Defendant Turano seeks to have the claim asserted against him by Plaintiffs in their First Amended Complaint [Doc #22] dismissed pursuant to Fed. R. Civ. P. 12(b)(1) for lack of jurisdiction and Fed. R. Civ. P. 12(b)(6) for failure to state a claim, based on the defense of qualified immunity. Oral arguments would not materially assist me in my determination of this motion. After consideration of the parties' arguments, and for the reasons stated, I GRANT the motion.

# I. BACKGROUND

Plaintiffs are the parents and personal representative of the estate of Jason Kemp, who was killed by a gunshot wound to his chest during an altercation with Colorado State Patrol ("CSP") officers on July 20, 2010. Plaintiffs allege that Defendants Ivan Lawyer, Kirk Firko, and Chad Dunlap executed a forced entry into Jason's residence – against his express request for a warrant – in order to obtain blood alcohol evidence to support a possible DUI following an accident that resulted in minor property damages. Once they obtained entry into the home, Defendant Lawyer shot and killed Jason, who was unarmed.

Plaintiffs have filed this lawsuit against the officers involved seeking damages for violations of his constitutional rights pursuant to 42 U.S.C.§ 1983 ("§1983"), and other rights under state law. Plaintiffs assert the following claims against Defendants Lawyer, Firko, and Dunlap, as the CSP officers on the scene: (1) a § 1983 claim for warrantless entry in violation of the Fourth Amendment; (2) a § 1983 claim for excessive/deadly force in violation of the Fourth Amendment; (3) a claim for conspiracy to violate § 1983; (4) a § 1983 claim for supervisor liability; and (5) a claim for wrongful death under Colorado law.

Plaintiffs also assert one claim against Defendant Turano. Plaintiffs allege that in his role as the CSP Legal Training Attorney, Defendant Turano was responsible for developing training materials and procedures relevant to legal search and seizure – specifically, warrantless entry and use of force – and for ensuring that the CSP officers involved were adequately trained on these policies and procedures. Plaintiffs maintain that Defendant Turano acted recklessly or with deliberate indifference to Plaintiff's constitutional rights, in violation of §1983, by failing to proved or in providing inadequate policies and training. [Doc # 22 - Sixth Claim for Relief]

## II. LAW

In this motion, Defendant Turano seeks dismissal of Plaintiffs' claim against him, for lack of subject matter jurisdiction and/or for failure to state a claim upon which relief can be granted, based on the defense of qualified immunity. The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)).

Defendant Turano's qualified immunity defense is raised in the context of a motion to dismiss, and so I bear in mind the Fed. R. Civ. P. 12(b)(6) standard. *See Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *Brown v. Montoya,* 662 F.3d 1152, 1162-63 (10th Cir. 2011). To survive a motion to dismiss, a plaintiff's pleadings must "nudge[ ] their claims across the line from conceivable to plausible." *Bell Atlantic v. Twombly*, *supra*, 550 U.S. at 570. In *Ashcroft v. Iqbal, supra,* the Supreme Court applied this standard to a motion to dismiss based on qualified immunity, and formulated the test as follows:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

129 S.Ct. at 1949 (quotations and citations omitted). In reviewing a motion to dismiss, "all well-pleaded factual allegations in the . . . complaint are accepted as true and viewed in the light most favorable to the nonmoving party." *Brown v. Montoya, supra,* 662 F.3d at 1162 -1163 (*quoting Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006)).

Defendant Turano also seeks dismissal, on the basis of qualified immunity, pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. Dismissal under Rule 12(b)(1) calls for a determination that the court lacks authority to adjudicate the matter, attacking the existence of jurisdiction rather than the allegations of the complaint. *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994)(recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). A facial attack on subject matter jurisdiction, as here, "looks only to the factual allegations of the complaint in challenging the court's jurisdiction." *Muscogee (Creek) Nation v. Okla. Tax Comm'n*, 611 F.3d 1222, 1227 n. 1 (10th Cir. 2010). A court reviewing a facial attack pursuant to Rule 12(b)(1) "accept[s] the complaint's factual allegations as true and asks whether the complaint, standing alone, is legally sufficient to state a claim for relief." *Wyoming v. United States.*, 279 F.3d 1217, 1222 (10th Cir. 2002). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *Basso v. Utah Power & Light Co.,* 495 F.2d 906, 909 (10th Cir. 1974).

### III.  FAILURE TO TRAIN

In their complaint, Plaintiffs allege that Defendant Turano had the responsibility of drafting policies and implementing adequate training for the CSP officers at its academy, its field training officer program (which trains officers to become qualified to act as supervisory and training personnel for the recruiting, teaching and evaluation of troopers), and at the "troop"

level (defined as regionally-divided smaller "troops" responsible for overseeing specific sections of Colorado). They further assert that Defendant Turano's failure to construct policies or implement training to teach CSP officers that a forced warrantless entries into an individual's home – in order to investigate minor auto-related accidents and/or preserve chemical evidence related to an alleged DUI – is unconstitutional. He also failed to train officers on safer, reasonable, and effective alternatives to forced, warrantless entry in order to obtain this evidence. Plaintiffs aver that as a direct and proximate result of his reckless or deliberately indifferent acts and/or failures to act, Jason was deprived of his constitutional protections against illegal search and seizure under § 1983. As such, Plaintiffs seek compensatory and punitive damages against Defendant Turano individually. [Doc # 22, ¶¶ 82-99]

Title 42 U.S.C. § 1983 provides that "[e]very person who, under color of any statute . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." In suits brought against officials in their individual capacities, officials may raise the defense of qualified immunity. *Kentucky v. Graham*, 473 U.S. 159, 166–67, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). Once a defendant asserts qualified immunity, the plaintiff bears the burden of satisfying a "strict two-part test." *McBeth v. Himes*, 598 F.3d 708, 716 (10th Cir. 2010) (*quoting Bowling v. Rector*, 584 F.3d 956, 964 (10th Cir. 2009)). That is "[t]he plaintiff must establish (1) that the defendant violated a constitutional or statutory right, and (2) that this right was clearly established at the time of the defendant's conduct . . . ". *Id.*

As an initial matter, I note that Defendant Turano is being sued in his individual capacity and, as such, I analyze this case under the law related to individual supervisory liability for

failure to train. The legal standards related to § 1983 municipality liability against a local governmental entity are not applicable here. *See Allen v. Muskogee*, 119 F.3d 837, 841 (10th Cir. 1997)(*citing City of Canton v. Harris,* 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)); *see also Stuart v. Jackson,* 24 Fed.Appx. 943, 2001 WL 1600722 (10th Cir. 2001); *Bruner-McMahon v. Hinshaw,* 2012 WL 138607 (D.Kan. Jan. 18, 2012)(applying different standards to § individual official and municipal entities for failure to train).

The law related to qualified immunity for supervisory liability under § 1983 has been recently addressed by the Tenth Circuit in a case in which a plaintiff alleged that a Sheriff, as a defendant-supervisor, was individually liable for violating the plaintiff's right to his protected liberty interest in posting bail by enforcing the continued operation of a policy that prevented individuals charged with a felony from posting bond after hours. *Dodds v. Richardson*, 614 F.3d 1185 (10th Cir. 2010), *cert. denied*, __U.S. __, 131 S.Ct. 2150, 179 L.Ed.2d 935 (2011). In reviewing the denial of the Sheriff's motion for summary judgment based on qualified immunity, the Tenth Circuit first determined whether the plaintiff established that the Sheriff violated a constitutional or statutory right. It concluded that the plaintiff had set forth facts that, if proven to be true, stated an underlying violation of his due process rights. *Id.* at 1202.

The Court then determined "whether this Defendant [the Sheriff] deprived Plaintiff of that right and whether he may be held liable for that deprivation." *Id.* at 1193. As such, the Court was faced with question about the "continuing vitality of supervisory liability under § 1983 after the Supreme Court's recent decision in *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)." *Id.* at 1194. The Court summarized the ruling of *Ashcroft v. Iqbal*, *supra*, as "when a plaintiff sues an official under . . . § 1983 for conduct 'arising from his

or her superintendent responsibilities,' the plaintiff must plausibly plead and eventually prove not only that the official's subordinates violated the Constitution, but that the official by virtue of his own conduct and state of mind did so as well." *Id.* at 1198 (*quoting Ashcroft v. Iqbal*, *supra*, 129 S.Ct. at 1949). The Tenth Circuit ruled that:

> Whatever else can be said about *Iqbal*, and certainly much can be said, we conclude the following basis of § 1983 liability survived it and ultimately resolves this case: § 1983 allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, implements, or in some other way possesses responsibility for the continued operation of a policy the enforcement (by the defendant-supervisor or her subordinates) of which subjects, or causes to be subjected that plaintiff to the deprivation of any rights secured by the Constitution.
>
> . . .
>
> A plaintiff may therefore succeed in a § 1983 suit against a defendant-supervisor by demonstrating: (1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation.

*Id.* at 1199-1200 (citations and quotations omitted). It further concluded that the *Ashcroft v. Iqbal* ruling did not alter "the Supreme Court's previously enunciated § 1983 causation and personal involvement analysis." *Id.* at 1200.

More specifically, the Tenth Circuit recognized that in order to show causation, there must be "an 'affirmative' link . . . between the unconstitutional acts by their subordinates and their 'adoption of any plan or policy . . . – express or otherwise – showing their authorization or approval of such misconduct." *Id.* at 1200. The Court then determined that the facts of its case, when taken in the light most favorable to the plaintiff, showed that the Sheriff "may have played more than a passive role in the alleged constitutional violation—he may have deliberately enforced or actively maintained the policies in question at the jail. Plaintiff has thereby

7

presented facts that establish personal involvement by [the Sheriff] in the alleged constitutional violation sufficient to satisfy § 1983." *Id.* at 1204.

Finally, the Court assessed whether the Sheriff acted with the state of mind required to establish a violation of the specific constitutional provision at issue. *Id.* at 1204. The Court went on to assume, without deciding, that deliberate indifference constituted the applicable intent requirement. *Id.* at 1205 ("whether the facts support the view that [the Sheriff] acted with deliberate indifference to Plaintiff's due process rights, *i.e.,* support the view that [the Sheriff] knew his actions created a substantial risk of constitutional injury").

In *Myers v. Koopman*, 2011WL 650328 (D. Colo. 2011), Judge Blackburn applied *Dodds v. Richardson, supra,* to an individual failure to train claim on the basis that "a failure to train theory has been seen as a supervisory liability claim that, at bottom, implicates a supervisor's implementation of a policy." *Id.* (*citing Dodds v. Richardson, supra*, 614 F.3d at 1209 (Tymkovich, J., concurring)). Judge Blackburn noted that the Tenth Circuit has clarified that to establish a violation of § 1983 by a supervisor, the plaintiff must, at minimum, establish a deliberate and intentional act on the part of the defendant to violate the plaintiff's legal rights. *Id.* (*citing Porro v. Barnes*, 624 F.3d 1322, 1327 -1328 (10th Cir. 2010)(assessing a failure to train claim based on municipal liability)); *see also Dodds v. Richardson, supra*, 614 F.3d at 1196 n. 4 (*citing Woodward v. City of Worland*, 977 F.2d 1392, 1399 & n. 11 (10th Cir.1992)(explaining that a plaintiff must establish supervisory liability by alleging more than gross negligence by demonstrating "an intentional, conscious, and deliberate act by the defendant participating in, or knowingly acquiescing in, the unconstitutional behavior")).

Thus, to demonstrate that a supervisor-defendant has violated the plaintiff's constitutional right in failing to train – in order to establish individual liability under § 1983 – a plaintiff must show: 1) an *underlying violation* of his constitution rights; 2) that the supervisor-defendant's personal involvement *caused* the misconduct complained of; and 3) that the supervisor-defendant acted with the state of mind or *intent* required to establish he committed a constitutional violation; specifically, at minimum, establish a deliberate and intentional act on the part of the defendant to violate the plaintiff's legal rights. *Dodd v. Richardson*, *supra*; *Myers v. Koopman*, *supra*.

## IV. ANALYSIS

A. Whether Defendant Violated A Constitutional Right

Defendant Turano first argues that Plaintiffs' complaint fails to contain sufficient facts to support their claim that the CSP officers on the scene committed an underlying constitutional violation. In so doing, Defendant Turano adopts and incorporates by reference the arguments made by Defendant Chad Dunlap in his Motion to Dismiss. [Doc # 37] I have rejected this argument, however, in my related order. [Doc # 84] Specifically, I determined that Plaintiffs' complaint adequately alleges that the CSP officers at the scene violated Jason's constitutional search and seizure rights related to warrantless entry and excessive force. As a result, I likewise conclude here that Plaintiffs complaint established underlying violations of his Fourth Amendment right against illegal search and seizure.

As such, I next assess whether Plaintiff has adequately alleged facts showing that Defendant Turano himself deprived him of the underlying constitutional right to be free from illegal search and seizure; specifically, whether Plaintiff has adequately alleged facts that

Defendant Turano's personal involvement caused the misconduct complained of. And, in doing so, whether Plaintiffs' complaint establishes that Defendant Turano's intent was to deliberately and intentionally fail to act in order to violate Jason's legal rights. *See Dodd v. Richardson, supra*, 614 F.3d at 1204; *Myers v. Koopman*, *supra*.

In their complaint, Plaintiffs allege that Defendant Turano and Defendant John Doe (a yet-to-be-identified CPS employee responsible for developing policies, procedures and training CSP officers, throughout their tenure, relevant to the matters alleged) failed to draft any policies and/or implement adequate training "regarding the legal limitations that must guide officers in making decisions as to the use of force and making warrantless forced entries into a residence in order to investigate minor auto-related accidents and/or preserve chemical evidence related to an alleged DUI." [Doc # 22, ¶ 85]

Because CSP officers "must regularly investigate minor auto-related accidents and alleged DUIs" and "[v]iolent, forced entries into residences with firearms drawn carry a substantial risk of personal injury to civilians and officers alike," Plaintiffs allege that any reasonable officer in Defendant Turano's position would have recognized the obvious need for policies and training, and that failure to provide it "was likely to result in the violation of constitutional rights, such as the violations suffered by Jason." Thus, Defendant Turano's "failure to create such adequate policies and implement such adequate training constitutes deliberate indifference to the constitutional rights of persons, including Plaintiff, with whom the Colorado State Patrol comes into contact." [Doc # 22, ¶ 90]

In support of this claim, the complaint refers to the fact that properly trained police officers would not have committed the actions of Defendants Lawyer, Firko and Dunlap, under

the alleged circumstances. And the incident occurred when three officers were on the scene – one of whom was a Sergeant with supervisory authority, and two of whom had completed and acted as trainers in the Field Training Officer program. "The actions of these officers was so out of line with constitutional standards that their actions could only be the result of policies and/or training that was created and/or implemented with reckless indifference to the risk of serious deprivations of constitutional rights." [Doc # 22, ¶¶ 91-92]

In addition, Plaintiffs allege generally that "upon information and belief " there was an accepted pattern and practice, prior to this incident, that CSP officers engaged in warrantless searches and seizures. Such contention is based on: "the specific factual information regarding Defendant Dunlap's, Firko's, and Lawyer's egregious, unlawful and unreasonable conduct resulting in the unconstitutional violations to Jason Kemp, the fact that three different officers were on the scene and took no action to stop the unconstitutional conduct but rather encouraged it, and the complete lack of training conducted or policies promulgated by Defendants Turano . . . regarding forced warrantless entry and use of force in the context of DUI and minor auto-related accident investigations." In addition, Plaintiffs allege generally that Defendant Turano "knew about other instances in which state patrol officers conducted warrantless searches and seizures" such as alleged here, and that he "intentionally failed to implement policies or training aimed at educating state patrol officers on the need to obtain a warrant prior to conducting a violent, forced entry of someone's home." [Doc # 22, ¶¶ 93-95] Thus, as a direct and proximate result of Defendant Turano's "reckless or deliberately indifferent acts and/or failures to act," Plaintiffs allege Jason was deprived of his constitutional rights. [Doc # 22, ¶ 97]

I conclude that Plaintiffs' complaint alleges insufficient factual matter to support that Defendant Turano's acts in failing to create policies for CPS officers and/or either failing or inadequately training the CPS officers related to the legalities of search and seizures under the circumstances presented here, demonstrate that his personal involvement ultimately *caused* the misconduct complained of, and that his *intent* was to deliberately and intentionally fail to act (in implementing adequate policies and training) in order to violate Jason's legal rights.

The facts supporting Plaintiffs' contention that Defendant Turano's failure to implement policies and/or train CPS officers caused the incident here consists mainly of Plaintiff's allegation that this incident presented here was so egregious, and three officers – two of whom were supervisors – where involved, that the inadequate policies and lack of training was obvious. Plaintiffs also make conclusory allegation that there was a pattern of such conduct, and that Defendant Turano knew about other instances of warrantless searches and seizures, but that he "intentionally failed to implement policies or training" to stop such constitutional violations.

However, Plaintiff's complaint contains only speculation of such practice. For example, the complaint only speculates that CSP officers must have engaged in warrantless searches and seizures, prior to this incident here, because of the egregiousness of the action of the three officers here, coupled with the "complete lack" of training or policies regarding forced warrantless entry and use of force in the context of DUI and minor auto-related accident investigations. In addition, the complaint alleges, without factual support, that Defendant Turano knew about such other instances, but intentionally failed to implement policies or training to educate on the need to obtain a warrant prior to conducting a violent, forced entry of someone's home. *See e.g. Connick v. Thompson*, ___ U.S. ___, 131 S.Ct. 1350, 179 L.Ed.2d

417 (2011)(in order to establish *municipal* liability for failure to train under § 1983, policymakers must be on notice that a particular omission in their training program causes its employees to violate citizens' constitutional rights, but choose to retain that program).

I conclude that the factual allegations in Plaintiffs' complaint, even when viewed as true, are insufficient to establish that Defendant Turano's personal involvement caused the underlying constitutional violations and that his intent, in so doing, was to deliberately and intentionally fail to implement policies and train CSP officers in order to violate Jason's legal rights. As such, Plaintiffs' complaint does not establish a plausible claim for individual supervisory liability under §1983 against Defendant Turano for failure to train.

B.  Whether the Constitutional Right was Clearly Established:

Because I have determined that Plaintiff's complaint fails to alleged sufficient factual matter to state a plausible claim for individual supervisory liability under § 1983 against Defendant Turano, I do not address the second prong of the two-part qualified immunity test - namely, whether the alleged constitutional violation was clearly established at the time of the incident.

ACCORDINGLY, I GRANT the Defendant Ralph C. Turano's Motion to Dismiss Plaintiffs' First Amended Complaint [**Doc # 41**] and, as such, I DISMISS Plaintiffs' Sixth Claim for Relief for Failure to Train against him.

Dated:  February __8__, 2012 in Denver, Colorado.

BY THE COURT:

  s/Lewis T. Babcock
LEWIS T. BABCOCK, JUDGE